1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10   SHEILA MARIE CHESNES,            )    Case No. CV 10-7535 PJW
                                      )
11               Plaintiff,           )
                                      )    MEMORANDUM OPINION AND ORDER
12        v.                          )
                                      )
13   MICHAEL J. ASTRUE,               )
     Commissioner of the             )
14   Social Security Administration,  )
                                      )
15               Defendant.           )
     _____)

16

17                            I.   INTRODUCTION

18        Plaintiff appeals the decision of Defendant Social Security

19   Administration ("the Agency"), denying her applications for

20   Disability Insurance benefits ("DIB") and Supplemental Security

21   Income ("SSI").  She claims that the Administrative Law Judge ("ALJ")

22   erred in finding that she was not credible.  (Joint Stip. at 3-12.)

23   For the reasons explained below, the Agency's decision is reversed

24   and the case is remanded for further proceedings.

25                       II.   SUMMARY OF PROCEEDINGS

26        Plaintiff applied for DIB and SSI on November 8, 2007, alleging

27   that she had been unable to work since December 30, 2006, because of

28   fibromyalgia, migraines, severe tendon problems, and vision problems.

1    (Administrative Record ("AR") 102-07, 111, 115.)  The Agency denied

2    her application initially and on reconsideration.  (AR 68-77, 83-87.)

3    She then requested and was granted a hearing before an ALJ.

4    (AR 89-91.)  Plaintiff appeared with counsel and testified at the

5    hearing on July 1, 2009.  (AR 41-67.)  The ALJ subsequently issued a

6    decision denying benefits.  (AR 11-24.)  Plaintiff appealed to the

7    Appeals Council, which denied review.  (AR 1-7.)  She then commenced

8    the instant action.

9                              III.   ANALYSIS

10        The ALJ found that Plaintiff's testimony that she was severely

11   impaired was not credible.  Plaintiff contends that the ALJ's reasons

12   for this finding were not clear and convincing and were not supported

13   by substantial evidence in the record.  (Joint Stip. at 4-12.)  For

14   the following reasons, the Court agrees.

15        ALJs are tasked with judging the credibility of the witnesses.

16   In making credibility determinations, they employ ordinary

17   credibility evaluation techniques.  *Smolen v. Chater*, 80 F.3d 1273,

18   1284 (9th Cir. 1996).  Where a claimant has produced objective

19   medical evidence of an impairment which could reasonably be expected

20   to produce the alleged symptoms and there is no evidence of

21   malingering, the ALJ can only reject the claimant's testimony for

22   specific, clear, and convincing reasons, *id.* at 1283-84, that are

23   supported by substantial evidence in the record.  *Thomas v. Barnhart*,

24   278 F.3d 947, 959 (9th Cir. 2002).

25        The ALJ found that Plaintiff's obesity, fibromyalgia, migraines,

26   and tendonitis were severe impairments.  (AR 17.)  She concluded that

27   these impairments could reasonably be expected to produce Plaintiff's

28   alleged symptoms and did not find that Plaintiff was malingering, but

                                     2

determined that her statements concerning her symptoms were "not entirely credible." (AR 20.) The ALJ cited four reasons for questioning Plaintiff's credibility: (1) Plaintiff exaggerated her claims of depression; (2) she regularly engaged in physical activities that were inconsistent with her claimed limitations; (3) the intensity of her alleged physical pain was inconsistent with the objective medical evidence; and (4) her headache claims were exaggerated. (AR 20-21.) The Court addresses each one in turn.

The ALJ rejected Plaintiff's testimony because she had not undergone any treatment to address her alleged depression and the consulting psychiatrist found that she was not limited as a result of her depression. (AR 20.) Plaintiff argues that this was not a valid reason to question her testimony because she never claimed that she was impaired due to depression. For the reasons explained below, the Court agrees.

Plaintiff never claimed that she was unable to work because she was depressed. (AR 50, 128, 138.) She complained mostly about physical ailments that caused severe pain and prevented her from working, though she noted that, beginning in 2006, she began experiencing panic attacks, which made it hard for her to cope. (AR 47-48, 128.) Though she testified at the administrative hearing that she cried a lot, she never claimed that that was the reason she could not work. (AR 49.) When she went to the consultative psychological examination, she told Dr. Stephan Simonian that she was depressed, and he agreed, diagnosing her with depression. (AR 198, 201.) But Plaintiff never added depression to her list of claimed impairments.

1    Thus, the Court is at a loss to understand why Plaintiff's
2    failure to seek treatment for depression establishes that she was
3    lying when she claimed that her physical ailments prevented her from
4    working.   It appears that Plaintiff may not have even recognized that
5    she was suffering from depression until she was in the midst of the
6    application process.   As such, the Court finds that her failure to
7    seek treatment is not a convincing reason for doubting her testimony.

8        The second reason the ALJ relied on for discounting Plaintiff's
9    testimony was that her daily activities--including taking walks,
10   preparing meals, and doing housework--were inconsistent with her
11   claimed level of impairment.   (AR 21.)   The record does not fully
12   support this finding.

13       A claimant's ability to perform daily activities may be grounds
14   for an adverse credibility finding where the ability to perform these
15   activities is inconsistent with the claimant's testimony or where the
16   claimant is able to "spend a substantial part of [her] day engaged in
17   pursuits involving the performance of physical functions that are
18   transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639
19   (9th Cir. 2007) (quotation omitted).   The fact that a claimant can
20   perform a limited range of chores, however, does not mean that she
21   can work or that she is lying when she claims that she cannot. *See*
22   *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (holding a
23   claimant need not be "utterly incapacitated" in order to be found
24   disabled).

25       Plaintiff testified that she did "light work" and "little
26   things" around the house, including "wash[ing] a sink or . . . a
27   couple dishes just to keep moving." (AR 51-53.)   She explained that
28   she did not cook like she "used to do" and instead, was confined to

merely microwaving her meals.  (AR 53.)  This testimony is consistent
with Plaintiff's April 1, 2008 disability report, in which she
explained, "[g]rocery shopping and housework are difficult due to
chronic pain," and with her August 26, 2008 disability report, in
which she stated, "it is very hard for me to clean the house."  (AR
131, 141.)  Plaintiff's roommate, Ron Parsons, corroborated
Plaintiff's account, testifying that Plaintiff did "minimal stuff"
around the house, including "put[ting] the dishes in the dishwasher."
(AR 58.)

Thus, the record establishes that Plaintiff's daily activities
were limited in scope, did not consume a substantial part of her day,
and were not necessarily transferable to the work setting.  As such,
they do not support the ALJ's finding that Plaintiff's ability to
perform them establishes that she was exaggerating her claims of
pain.  *See Orn*, 495 F.3d at 639; *Fair v. Bowen*, 885 F.2d 597, 603
(9th Cir. 1989)

The ALJ's third reason for rejecting Plaintiff's testimony was
that the objective medical evidence was inconsistent with Plaintiff's
subjective claims of back and joint pain.  (AR 21.)  For the
following reasons, the Court finds that the ALJ erred in making this
determination.

Generally speaking, where a claimant's alleged pain is
inconsistent with the objective medical evidence, the ALJ may
consider that fact in questioning a claimant's testimony.  *See Parra
v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (upholding ALJ's adverse
credibility finding where claimant's complaints of knee pain were
contradicted by tests showing knee function within normal limits);
*Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (upholding

5

1   ALJ's credibility finding in part because evaluations revealed little

2   evidence of disabling abnormality of the claimant's spine).

3   Fibromyalgia, however, is a unique affliction.  Its cause is unknown;

4   it is diagnosed entirely on the basis of a patient's reported pain

5   and other symptoms; and there are no laboratory tests to confirm the

6   diagnosis.  *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004).

7   As such, it is generally not appropriate to rely on the absence of

8   objective medical evidence alone to discredit a claimant's claims of

9   pain stemming from fibromyalgia.  *See, e.g., id.* at 594 (noting ALJ

10  errs when he requires claimant to produce objective medical evidence

11  for a disease without objective measurement); *Preston v. Sec'y,*

12  *Health & Human Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988) ("In

13  stark contrast to the unremitting pain of which fibrositis patients

14  complain, physical examinations will usually yield normal results--a

15  full range of motion, no joint swelling, as well as normal muscle

16  strength and neurological reactions.").

17      Here, the ALJ relied almost entirely on such evidence to find

18  that Plaintiff's back and joint pain claims were not credible.

19  (AR 21-22.)  To the extent that the ALJ mentioned Plaintiff's

20  subjective complaints or symptoms, it was only to note that they were

21  consistent from year-to-year and appointment-to-appointment.  For

22  example, the ALJ pointed out that treating notes indicated that

23  Plaintiff's "check list of self[-]reported symptoms did not vary from

24  visit to visit" and that "[c]hronic pain and fibromyalgia were

25  repeatedly mentioned with few comments regarding changes in

26  symptoms."  (AR 22.)  But, this seems to suggest that her claims were

27  more, not less, credible.  *See, e.g., Green-Younger v. Barnhart*, 335

28  F.3d 99, 108 (2d Cir. 2003) (claimant's complaints "of pain in her

1   back, legs, and upper body, fatigue, and disturbed sleep" were
2   credible, in part, because they were "internally consistent and
3   consistent with common symptoms of fibromyalgia").  The ALJ also
4   observed that the treatment notes "reveal that most [of Plaintiff's
5   doctor] visits were for refills of pain medication," (AR 21, 22),
6   another assertion that makes Plaintiff's pain complaints more, not
7   less, credible because, presumably, Plaintiff had been taking her
8   pain medications because she needed them and had returned to obtain
9   more.  As such, the Court does not find this a convincing reason for
10  discounting Plaintiff's testimony.

11      Finally, the ALJ determined that Plaintiff's claims of severe
12  migraine headaches were not credible because the headaches could be
13  controlled with medication and were unaccompanied by visual symptoms
14  like photophobia.  (AR 21.)  The Court concludes that there is
15  substantial evidence in the record to support the first finding, but
16  not the second.

17      In determining whether a claimant's testimony is credible, an
18  ALJ may consider an unexplained or inadequately explained failure to
19  seek treatment or to follow a prescribed course of treatment for
20  allegedly disabling pain.  *Orn*, 495 F.3d at 638 (citing *Fair*, 885
21  F.2d at 603).

22      In a February 2008 headache questionnaire, Plaintiff explained
23  that Imitrex "usually takes [her migraines] away" and "is the only
24  thing that works" to stop her headaches.  (AR 123.)  Plaintiff
25  discontinued using Imitrex in 2007, however, and was not taking it
26  when she appeared at the administrative hearing in July 2009.  (AR
27  123, 145.)  There is nothing in the record to explain why Plaintiff
28  stopped taking Imitrex.  The Court notes, too, that Plaintiff was not

taking pain medication, other than Excedrin, at the time of the administrative hearing.  (AR 50.)  When asked why, she told the ALJ, "I don't want to take [pain medication] because right now I'm not working, and I would rather just deal with the pain on my own and try to do things like relax, lay down."  (AR 50.)  Though, to be fair, she also claimed that the doctors had prescribed too much medication and that it caused her to be "loopy" and that she was scared to "take them all."  (AR 51.)

In the Joint Stipulation, Plaintiff's lawyer argues that Plaintiff stopped taking Imitrex because she lost her medical insurance, (Joint Stip. at 10-11), citing a headache questionnaire she submitted in 2008.  (AR 122-23.)  This document, however, does not state that she stopped taking Imitrex because she lost her insurance.  Even if it did, it would still be a questionable explanation since it is clear in the record that she continued to receive prescription medication after she lost her insurance.  (AR 276-77.)

Because it was reasonable for the ALJ to assume that, if Plaintiff's migraines were as debilitating as she claimed, she would have used Imitrex--the "only thing that work[ed]" to control her headaches--the ALJ's finding that her headache complaints were not credible due to the fact that she was not taking that medication is valid and convincing.  *Orn*, 495 F.3d at 638 (citing *Fair*, 885 F.2d at 603).

The record, however, does not support the ALJ's determination that there were "no reports of visual problems such as photophobia" associated with Plaintiff's headaches.  (AR 21.)  In fact, the record contains references to photophobia, (AR 122, 276), and the ALJ

herself recognized in her decision that Plaintiff had complained to her physicians about photophobia. (AR 17.)

In the end, of the four reasons cited by the ALJ for rejecting Plaintiff's testimony, the Court finds that only one--Plaintiff's failure to take medication that controlled her migraines--was a valid reason that was supported by substantial evidence. The issue that remains is whether this reason alone is enough to uphold the ALJ's credibility finding. *See Carmickle,* 533 F.3d at 1162 (stating "relevant inquiry . . . is whether the ALJ's decision remains legally valid" despite errors in the credibility analysis). The Court concludes that it is not. Further, and importantly, the Court is not convinced that the ALJ would have rejected Plaintiff's credibility for this reason alone and, therefore, remand is required to allow her to reconsider the credibility finding in light of the Court's ruling.

Plaintiff asks the Court to remand the case for an award of benefits. The Court recognizes it has the authority to do so, *see McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989), but concludes that that relief is not warranted here. It is not clear to the Court from the record before it that Plaintiff is, in fact, credible or that she is disabled. Further proceedings are necessary to flesh this out. *See Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (holding remand for further proceedings was appropriate where the record contained additional unanswered questions regarding the applicant's eligibility for benefits).

IV.   CONCLUSION

For these reasons, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this order.

IT IS SO ORDERED.

DATED: September 24, 2011.


_____
PATRICK J. WALSH
United States Magistrate Judge

S:\PJW\Cases-Soc Sec\CHESNES, S 7535\memorandum.wpd

10